WORTH and another, Appellants, v. KELLEY COMPANY, INC., Respondent.

*January 6—February 4, 1964.*

For the appellants there were briefs by *Wickert, Fuhrman & Ellegard* of Milwaukee, and oral argument by *John Ellegard.*

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Reuben W. Peterson, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Peterson.*

DIETERICH, J.   The record discloses that the Kelley Company is engaged in the manufacture and sale of adjustable truck platforms, and employs 57 people in all its divisions. In 1957, the Kelley Company entered into a lease agreement with Bernard R. Worth for certain property located on West Mill road in Milwaukee county. The lease was for a term of ten years, beginning upon completion of a building constructed by the lessor to fit the needs of the company at an approximate cost of $70,000-$75,000. The appellants, Richard and Catherine Worth, purchased Bernard Worth's interest in the property and took an assignment of the lease approximately one year prior to the commencement of the instant action.

The 1957 lease provided for annual rent of $7,800 and contained the following provisions:

"8. The lessee shall have the right to remove from the demised premises all machinery, apparatus and equipment installed therein whether or not such machinery, apparatus and equipment be attached to the real estate, excepting that such right of removal shall not apply to any machinery, apparatus or equipment paid for in whole or in part by the lessor, and provided that all such machinery, apparatus and equipment shall be removed at the date of the termination of this Lease or any extension or renewal thereof, and provided further that the lessee shall restore and repair any damage to the demised premises caused by the removal of such machinery, apparatus and equipment."

"12. If default is made in the payment of rent, at the times above stated, or if the lessee shall break any of the covenants and agreements herein contained, or shall willfully or maliciously do injury to the premises, or shall file a petition in bankruptcy or have an involuntary petition in bankruptcy filed against it, or make an assignment for the benefit of creditors, the lessor or its legal representatives shall have the right at any time thereafter, without notice, to declare this Lease void and the term herein contained ended, and may re-enter the premises and expel the lessee, using such force as may be necessary, without prejudice to any remedies which the lessor may have to collect arrears of rent, and it is agreed that upon the occurrence of any default by the lessee under this Lease, the lessor shall have the right to distrain for rent, and shall have a valid and first lien upon all the personal property of the lessee, whether located upon said premises or not, and whether exempt by law or not, as security for the payment of the rent and other obligations herein provided for. The lessee agrees not to remove from the premises any of its equipment, books of account or fixtures until the accounts of the lessor and lessee under this Lease have been finally and completely settled, and agrees not to remove any stock after any default by it hereunder until such accounts have been settled."

In April, 1962, a new site was acquired for the Kelley Company through a corporation set up for this purpose, whose stockholders were officers and employees of the company. The new site is located on Teutonia avenue in the

city of Milwaukee, approximately one mile from the leased property on West Mill road.

The only witness called at the trial was Mr. Garrett P. Kelley, president of the Kelley Company. Mr. Kelley testified that they began moving engineering and experimental equipment to the new plant site on August 10 and 11, 1962, and that the office equipment was moved about one week later. Mr. Kelley further testified that the new property will give them much-needed additional space, and that they will be able to perform many operations in the new building which cannot be performed in the West Mill road plant. This work is presently being done by various subcontractors. According to Mr. Kelley, the Kelley Company is leaving $45,000 worth of equipment and machinery at the West Mill road property for operations intended to be begun there, although he also stated that they were attempting to sublease the property, and if a tenant was found who wanted the entire property, they would vacate.

On August 18, 1962, the Kelley Company received notice from the Worths to cease their moving operations, and nothing was moved after the notice was received. Testimony was received to the effect that the detailed moving plans formulated by the Kelley Company had to be canceled as a result of the temporary injunction. There was also evidence of wide newspaper publicity given to the pending move of the Kelley Company in April, 1962, approximately four months before the actual move was begun, and the appellants concede that the company's acquisition of the Teutonia avenue site was not unknown to them.

During the trial, plaintiffs introduced into evidence an unsigned lease bearing the date "1959," which contained terms similar to those found in the 1957 lease, although it increased the annual rent to $13,320. The 1959 lease was admitted into evidence subject to objection. The Kelley Company began paying the increased rent, and it was conceded by the parties

that there had been no default in the rental payments. On this appeal, we are dealing solely with the 1957 lease.

The appellants rely on the last sentence of paragraph No. 12 of the lease, which provides that the lessee agrees not to remove any equipment until all accounts have been finally and completely settled, and agrees not to remove any stock after any default until such accounts have been settled. The Kelley Company places its principal reliance on paragraph No. 8 of the lease, which provides in part that the lessee shall have the right to remove all machinery and equipment (except such machinery or equipment paid for by the lessor), as long as the lessee restores and repairs any damage to the premises caused by the removal of such equipment.

The first portion of paragraph No. 12 of the lease reads in part as follows: "If default is made in the payment of rent . . . or if the lessee shall break any of the covenants . . . or shall willfully or maliciously do injury to the premises, or shall file a petition in bankruptcy . . . or make an assignment for the benefit of creditors, the lessor . . . shall have the right . . . to declare this Lease void . . . and may re-enter the premises . . . and it is agreed that upon the occurrence of any default by the lessee . . . the lessor shall have the right to distrain for rent, and shall have a valid and first lien upon all the personal property of the lessee . . . as security for the payment of the rent and other obligations provided for."

It is clear from the foregoing language that paragraph No. 12 of the lease only applies in the event of the lessee's default in payment of rent; the lessee's breach of covenant; the lessee's wrong in wilfully or maliciously damaging the premises; or the lessee's bankruptcy or insolvency. Upon the occurrence of any of these events, the lessor is given the right to re-enter and dispossess the lessee, the right to distrain for rent, and a first lien upon all the lessee's personal property as security for the payment of rent and other obligations pro-

vided for in the lease. When the final sentence of the paragraph is read in conjunction with the language preceding it, the meaning of this sentence is clear. The lessee has agreed not to remove any of the described property after default or breach on its part and after termination and re-entry by the lessor, for it is only then that there are accounts between the landlord and tenant to be finally settled.

This conclusion is in accord with the cardinal rule of construction which prohibits severance of a sentence or clause from the rest of the agreement for the purpose of arriving at a result different from that which is made manifest by the agreement taken as a whole. See *Dick v. Heisler* (1924), 184 Wis. 77, 81, 198 N. W. 734; *State ex rel. Dept. of Agriculture & Markets v. Badger Dairy, Inc.* (1944), 245 Wis. 229, 232, 14 N. W. (2d) 34. It is also consistent with the well-recognized rule to the effect that an interpretation which gives a reasonable meaning to all provisions of a contract is to be preferred to one which leaves part of the language useless or inexplicable, or creates surplusage. *Nelson v. Boos* (1959), 7 Wis. (2d) 393, 96 N. W. (2d) 813.

There is no evidence in the record indicating breach or default on the part of the Kelley Company within the purview of paragraph No. 12 of the lease. There are no accounts to be finally settled. It follows that paragraph No. 12 of the lease has no application to the facts in the instant action, and that under the provisions of paragraph No. 8, the Kelley Company cannot be restrained from removing the property in question from the leased premises. The judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.